The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award.
Pursuant to the Full Commission's August 5, 1998 Opinion and Award, a medical report from Dr. John A. Whitt has been submitted and is hereby admitted into the record of evidence. Based upon this additional evidence, and pursuant to its authority under G.S. § 97-85, the Full Commission hereby amends its prior Opinion and Award regarding the issue of plaintiff's depression and its causal relationship to his May 17, 1995 injury by accident.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and following the hearing on 17 January 1997 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employer-employee relationship existed between parties on May 17, 1995 and at all times relevant to this controversy.
5. Plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer on May 17, 1995.
6. Plaintiff received short-term disability payments from a policy which was completely funded by defendant-employer. Thereafter, plaintiff received long-term disability benefits in the amount of sixty percent of his salary with defendant-employer funding fifty percent of plaintiff's former salary and plaintiff funding ten percent of his former salary.
7. The parties stipulated into evidence, without further authentication or verification, plaintiff's medical records from the following providers:
— Duke University Medical Center;
— Dr. Stephanie D. Griffin;
— Dr. William M. Batchelor;
— Alternatives;
— Comprehensive Rehab of Wilson;
— Dr. Robert Gregory; and,
— From prior audiograms.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections raised by the parties at the depositions of Dr. Kushner and Dr. Stone are ruled upon in accordance with the law and Opinion and Award in this matter.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a thirty-seven year old male, born October 6, 1959. Plaintiff is a high school graduate and has been employed by defendant-employer since high school with the exception of one year. Plaintiff was hired by defendant-employer in January 1979 as a relief palletizer. Thereafter, plaintiff worked as a palletizer, selector and finally a cold end shift supervisor and had been so employed for six years at the time of his injury. As a shift supervisor, plaintiff was responsible for the production of six lines which produced glass containers. Plaintiff was responsible for the equipment on each line, inspecting all production, and supervising the forty employees which run the six production lines. Plaintiff's area was very noisy and busy at all times.
2. On May 17, 1995 at approximately noon, as plaintiff was performing his duties as a cold end shift supervisor, an automatic palletizer machine experienced problems with its electrical photo eye. Plaintiff climbed the stairs on top of the machine approximately twenty feet off the ground, laid down on top of the plate and hung his head and shoulders off to reach down. As plaintiff reached down to take the cover off, he received an electrical shock. Thereafter, plaintiff was stunned and probably lost consciousness. On his way to the nurses office he remembered having black vision which progressed to black dots, experiencing a lack of balance and having problems remembering what happened.
3. From May 17, 1995 through the following month, plaintiff felt light-headed, and experienced headaches that progressed in severity. Plaintiff also had trouble sleeping.
4. On July 11, 1995, plaintiff presented to Dr. Stephanie Griffin, his family physician, complaining of severe headaches. At that time, plaintiff appeared depressed to Dr. Griffin. Plaintiff was prescribed medication for the headache and referred to a psychiatrist for help with depression.
5. On July 12, 1995, plaintiff presented to Dr. John A. Whit, a psychiatrist, suffering from depression. Plaintiff was diagnosed with experiencing a major depressive episode and was prescribed various medications by Dr. Whitt.
6. Plaintiff was written out of work by Dr. Whit on July 28, 1995 for his depression and was allowed to return to work on September 30, 1995. Plaintiff began to receive short-term disability benefits on July 27, 1995 and received these benefits until he returned to work on September 30, 1995. Plaintiff was out of work forty-eight days during this period and was paid one hundred percent of his salary pursuant to the short-term disability plan which was fully funded by defendant-employer. Plaintiff received $3,413.00 per month pursuant to that short-term disability plan.
7. Plaintiff continued to experience severe headaches through August 1995 and was referred by Dr. Griffin to Dr. Michael Kushner, a neurologist. Plaintiff was first seen by Dr. Kushner on August 29, 1995 experiencing headaches, dizziness, ringing in the ears and tenderness at the base of the skull. Plaintiff was diagnosed as having headache syndrome, progressing and tinnitus of the left ear. Dr. Kushner prescribed anti-inflammatories and gave plaintiff a nerve block of the occipital nerve for the tenderness at the base of his skull.
8. Plaintiff was referred by Dr. Kushner to Dr. Robert L. Stone, an otorhinolaryngologist. Plaintiff was first seen by Dr. Stone on September 27, 1995. At that time, plaintiff was complaining of severe headache and ringing in his left ear.
9. On September 30, 1995, plaintiff returned to work after being released by Dr. Whit. Plaintiff worked until November 22, 1995 when he could no longer perform his duties due to the headaches and ringing in his ears which were exacerbated by the loud noise exposure required by his job. At that time plaintiff again began receiving short-term disability payments at a rate of one hundred percent of his salary totally funded by his employer.
10. On November 22, 1995, Dr. Stone indicated that plaintiff's tinnitus and hearing difficulties were aggravated by noise and put plaintiff on light duty away from noise or indicated that he should be on sick leave.
11. On December 12, 1995, plaintiff returned to Dr. Kushner complaining of increased tinnitus.
12. On December 19, 1995, plaintiff was referred by Dr. Kushner to Dr. Joseph C. Farmer, Jr. an ear, nose and throat specialist. Plaintiff returned to Dr. Stone on May 8, 1996, November 6, 1996 and February 26, 1997 experiencing problems similar to those which he was experiencing when he first presented.
13. On October 21, 1996, plaintiff returned to Dr. Kushner complaining of daily headaches and continuous ringing in his left ear. On December 4, 1996, plaintiff complained of similar problems and memory loss and confusion. On December 26, 1996, a MRI was performed and interpreted as normal. Plaintiff returned to Dr. Kushner on December 31, 1996 complaining of continued headaches, and at that time was referred to Dr. Gregory for neuropsychological studies.
14. Prior to plaintiff's March 17, 1995 injury by accident, plaintiff had not experienced ringing in his ears or headaches.
15. Plaintiff has not reached maximum medical improvement.
16. Beginning in November 1996 and continuing until the time of the hearing, plaintiff was employed on a part-time basis as a personal trainer at Regency Athletic Club. In that capacity plaintiff charged $30.00 a session, sixty percent of which went to plaintiff ($18.00) and forty percent went to the health club. Plaintiff during that period of time had between three and six appointments per week. Plaintiff's average weekly wage at Regency Athletic Club is $81.00. The difference between plaintiff's average weekly wage before his injury by accident $796.18, and his average weekly wage thereafter $81.00, is $715.18, yielding a compensation rate of $476.81.
17. Plaintiff's short-term disability policy provided for one hundred thirty days of short-term disability. As plaintiff had already received forty-eight days of short-term disability, starting November 22, 1995 and continuing until April 8, 1996, plaintiff received eighty-two additional days of short-term disability payments. Effective April 8, 1996, plaintiff started long-term disability. This policy paid plaintiff sixty percent of his salary which is funded at fifty percent of his salary by the defendant-employer and ten percent by the plaintiff. Plaintiff continues to receive this benefit and will continue to receive it throughout his disability until he reaches retirement age.
18. On May 17, 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when he received an electrical shock.
19. As a direct and proximate cause of his injury by accident arising out of and in the course of his employment on May 17, 1995, plaintiff suffered severe headaches and severe tinnitus of the left ear.
20. At the time of plaintiff's May 17, 1995 injury by accident, plaintiff was earning an average weekly wage of $796.18, yielding the maximum compensation rate for 1995 of $478.00.
21. As a direct and proximate result of his work-related injury by accident on May 17, 1995, plaintiff has been unable to engage in physical activities required by his former job. As a result of his compensable injury on May 17, 1995, plaintiff was incapable of earning the same wages with defendant-employer or in any other employment from November 22, 1995 until November 1, 1996.
22. As a direct and proximate result of his work-related injury by accident on May 17, 1995, plaintiff has had a diminished earning capacity since November 1, 1996. From November 1, 1996, plaintiff has earned an average weekly wage of $81.00.
23. Plaintiff's injury by accident on May 17, 1995 has diminished his capacity to earn wages.
24. Pursuant to the Full Commission's August 25, 1998 Opinion and Award, Dr. Whitt re-evaluated plaintiff on October 13 and October 14, 1998. Following this re-evaluation, Dr. Whitt opined that plaintiff's May 17, 1995 work related injury was a significant contributing factor in the exacerbation of plaintiff's depression.
25. Based upon the credible medical evidence of record, plaintiff's depression was significantly exacerbated by his May 17, 1995 injury by accident.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 17, 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. As the result of his May 17, 1995 injury by accident, plaintiff sustained severe headaches, tinnitus of the left ear and a significant exacerbation of his depression. G.S. §97-2(6).
3. From November 22, 1995 to November 1, 1996, plaintiff was incapable because of his work-related headaches and tinnitus, to earn the same wages which he was receiving at the time of his injury at the same or any other employment; thereafter, plaintiff had a diminished earning capacity. G.S. § 97-29; G.S. §97-30.
4. Plaintiff is entitled to temporary total disability compensation at the rate of $478.00 per week for the period of November 22, 1995 to November 1, 1996. G.S. § 97-29.
5. Plaintiff is entitled to temporary partial disability compensation at a rate of $476.81 from November 1, 1996 and continuing, subject to the statutory maximum of 300 weeks. G.S. § 97-30.
6. Defendants have paid for certain short-term disability benefits which plaintiff received during the period of his inability to work due to his work-related injury. Plaintiff received these benefits for eighty-two days between November 22, 1995 and April 7, 1996. Thereafter defendants have paid for a portion of plaintiff's long-term disability. Defendants are entitled to credit for the same. Payments made by defendants to plaintiff during his period of disability may be deducted from the amount to be paid as compensation. However, these deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment. Furthermore, the deduction shall be calculated from payments made by the employer in each week during which compensation was due and payable, without any carry forward or carry back of credit for amounts paid in excess of the compensation rate in any given week. G.S. § 97-42.
7. Plaintiff has not yet reached maximum medical improvement, and plaintiff has not been assigned a permanent partial disability rating. G.S. § 97-31.
8. As the result of his May 17, 1995 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including expenses related to additional psychological treatment for plaintiff's depression. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the Deputy Commissioner's holding and enters the following:
 AWARD
1. Defendants shall pay compensation to the plaintiff at the rate $478.00 per week from November 22, 1995 to November 1, 1996 for his temporary total disability. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved in Paragraph 3.
2. Defendants shall pay temporary partial disability compensation to plaintiff at a rate of $476.81 from November 1, 1996 and continuing until further Order of the Commission. A portion of this compensation has accrued and shall be paid in a lump sum, subject to a reasonable attorney's fee approved in Paragraph 3.
3. A reasonable attorney's fee of twenty-five percent of the compensation due under Paragraphs 1 and 2 of this award is approved for plaintiff's counsel and shall be paid by deducting from that sum and paid directly to plaintiff's counsel. For continuing compensation payments, every fourth check shall be paid to plaintiff's attorney.
4. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as the result of his May 17, 1995 injury by accident, including expenses related psychological treatment for plaintiff's depression.
5. Defendant shall bear the costs.
 S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER